Taft, J.,
dissenting. In my opinion, this decision and especially paragraph one of the syllabus represents a radical departure from previous pronouncements of this court with respect to the necessity of scienter in an action for deceit.
As appears from plaintiffs’ petition, the alleged representation of defendant Taylor relied upon by plaintiffs was “that the outside walls of said house were of tile construction.” That they were not of such construction appears from the allegations of the petition as to the manner of their construction which allegations are quoted in the majority opinion.
As indicated by the syllabus in the instant case, defendant Taylor did not know that his representation as to “tile construction” was false. On the evidence in the record, reasonable minds could reach no other conclusion.
This house had been built by a man named Rogers in 1939. In 1946, it was purchased by a man named Mack who thought its walls were constructed of tile and who did not learn of its peculiar type of construction until he had lived in it for several months and then not from any examination or discovery but only by being informed by neighbors who had seen it built. In 1950, Mack applied Perma-Stone to the exterior walls below the roof line. In 1952, the Quillens, who are codefendants with Taylor, acquired the house from Mack, who did not tell them about its peculiar type of construction. The Quillens, as well as the real estate man who represented Mack in selling the house to them and who was a builder, believed that the house was of masonry construction. The Quillens listed the house for sale with a real estate man named Force who is also a codefendant. Defendant Taylor learned of the availability of the Quillen property through the Akron Real Estate Board multiple listing arrangement. Defendant Taylor obtained permission from Force to show the property to the plaintiffs. An appraiser examined the property for his bank and reported it as a masonry building; and a loan in a substantial amount was granted to plaintiffs on the basis of that appraisal. There is no evidence that anyone, who had any contact with the house after Mack had disposed of it, either as an owner, a real estate salesman, an appraiser or in any other capacity, even suspected the true nature of its construction until February 1953 when plain *350 tiffs removed the wall hoards in the attic and drilled one-inch holes through the exterior walls. This was after plaintiffs had lived in the house for over six months. Even plaintiffs’ building expert admitted on cross-examination that, if he had examined the property before those wall boards had been pulled down, he would have assumed the building to be of masonry construction.
The “rule” quoted in the majority opinion from American Jurisprudence is by its words to apply only “when in fact he [the maker of a false statement] has no knowledge as to whether his assertion is true or false,” a situation wholly different from that in the instant case where defendant Taylor believed as everyone else did that this building was of masonry construction.
Paragraph one of the syllabus in the instant case represents a statement of the minority rule. See 23 American Jurisprudence, 927, Section 132. In 23 American Jurisprudence, 910, Section 122, it is said:
“The rule is well settled * * * in a majority of American jurisdictions and in the English courts, that in a law action of deceit in tort scienter must be established. Scienter, a term usually employed in legal issues involving fraud, means knowledge on the part of a person making representations, at the time when they are made, that they are false.”
Ohio has always followed the majority rule. See 19 Ohio Jurisprudence, 368, Section 67.
For example, in Taylor v. Leith, 26 Ohio St., 428, the syllabus reads in part:
“3. The defendant requested the court to instruct the jury, ‘that to constitute fraud there must have been bad faith on the part of defendant; that is, the representations by the defendant must have been not only false, but known by the defendant to be false, or such as he had no good reason to believe to be true. ’
“This instruction the court refused to give as asked, but gave it with the following addition: ‘or did not know to be true’ —Reid, that the instruction as given was calculated to mislead the jury by giving them to understand that representations *351 which were untrue in fact would give a cause of action, although they may have been founded in mere mistake.
“4. If the representations on which the action is founded were, when made, believed to be true, and the facts of the case were such as to justify the belief, there would be no fraud and there could be no recovery. ’ ’
As recently as last July, it was said in the opinion by Bell, J., in Greenwalt v. Goodyear Tire & Rubber Co., 164 Ohio St., 1, 6, 128 N. E. (2d), 116:
“To maintain an action for damages for deceit certain elements must be present. There must be (1) an actual or implied false representation or concealment (2) of a material fact (3) with knowledge of its falsity (4) made with the intent to mislead another into relying upon it and (5) followed by actual reliance thereon by such other person having the right to so rely (6) with injury resulting to such person because of such reliance.” (Emphasis added.)
Also, in paragraph one of the syllabus of Drew v. Christopher Construction Co., Inc., 140 Ohio St., 1, 41 N. E. (2d), 1018, which purports to approve and follow Gleason v. Bell, 91 Ohio St., 268, 110 N. E., 513, it is stated that “a purchaser * * * may maintain an action to recover the damages sustained as a result” of “false representations of a vendor” where such representations were when made “known by the vendor to be untrue. ’ ’
Paragraph one of the syllabus in the Gleason case states that ‘ ‘ an averment that the vendor knew the representations to be false * * * is not essential” but limits that statement to a situation “where * * * false representations * * * by the vendor” were “made under such circumstances that the vendor should have knoion of the falsity of the representations. ’ ’ There is no such limitation stated in paragraph one of the syllabus in the instant case, probably because the evidence in the instant case could not support a reasonable inference that defendant Taylor should have known that the house in the instant case was not of masonry construction.
See also paragraph two of the syllabus of Bloch v. Bloch, post, 365.
As to the other cases cited in the majority opinion, their use *352 is a good example of how, to use the words of Professor Bohlen in discussing this problem (42 Harvard Law Review, 733), “difficulties and anomalies are created by thinking in terms of names rather than realities.” Those other cited cases dealt with problems as to what must be shown to support actions for equitable relief on account of false representations, — not actions at law for deceit. Thus, Parmlee, Admr., v. Adolph, 28 Ohio St., 10, involved an action to rescind a contract, and Aetna Insurance Co. v. Reed, 33 Ohio St., 283, dealt with rescission of a release. (Parenthetically, it should be noted that the Reed case is the only authority cited in the text to support the statement quoted in the majority opinion from Ohio Jurisprudence; and a reading of paragraph two of the syllabus of that case raises substantial doubt as to whether it does support the broad statement in the quoted portion of that text.) The reason why they are not particularly helpful in determining whether scienter is an essential element of a cause of action at law for deceit based upon false representations is well stated in the opinion in Mulvey v. King, 39 Ohio St., 491, 494, as follows:
“It may be considered as well settled in this state, by the cases above cited, that an action for damages caused by misrepresentation cannot ordinarily be maintained, without proof of actual fraud, or such gross negligence as amounts to fraud. When, however, a person claims the benefit of a contract into which he has induced another to enter by means of misrepresentations, however honestly made, the same principles cannot be applied. It is then only necessary to prove that the representation was material and substantial, affecting the identity, value or character of the subject matter of the contract, that it was false, that the other party had a right to rely upon it, and that he was induced by it to make the contract, in order to entitle him to relief either by rescission of the contract or by recoupment in a suit brought to enforce it.”
To the same effect see 23 American Jurisprudence, 929 et seq., Sections 133, 134. See also Taylor v. Leith, supra, (26 Ohio St., 428), 433, 434.
If, in the instant case, plaintiffs had sought to rescind the transaction of sale and give back title to the purchased property in exchange for what they had paid the Quillens for it, then, *353 as pointed ont in the above quotation from the opinion of Mulvey v. King, they might be entitled to such relief against the Quillens even though the Quillens did not know about the alleged untrue representation by Taylor. If it was only because of that representation that the Quillens received the substantial price paid them by plaintiffs for this property, equity might well prevent such enrichment of them at plaintiffs’ expense by decreeing rescission of the transaction of sale. But cf. Traverse v. Long, ante, 249.
Also, if this were an action merely to “recover back * * * the price paid for” this house from the Quillens to whom it was paid, perhaps the same reasons which justify having no requirement of proof of scienter in rescission actions (i. e., prevention of unjust enrichment) might support such relief at law against the Quillens. See 23 American Jurisprudence, 932, Section 134. However, defendant Taylor never received any such purchase price from plaintiffs. He only received as his commission one-half of the five per cent real estate commission paid. In the absence of proof of scienter, it is difficult to justify any relief against him by way of recovery from him of more than he received out of the transaction. Bohlen, Misrepresentation as Deceit, Negligence, or Warranty, 42 Harvard Law Eeview, 733, 746.
In the instant case, the majority opinion apparently recognizes the following anomalous situation as being reasonable and in accordance with the law of this state:
Q owns a house having no value. He employs T to sell it for him. T represents to P that the house is of masonry construction. If it were, it would be worth $8,000. In reliance on that representation, P pays Q $8,000 for the house and Q pays T a commission of $200. Thus Q gets $7,800 for nothing. Under the decision of this court, Q is allowed to keep the $7,800 and P gets his $8,000 back from T who had received only $200 out of the transaction and did not know that his representation was not true.